**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN JOSE ZAZUETA JR., Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MAISON PREMIERE CORP., PREMIERE ENTERPRISES LLC, THE DOWNTOWN LLC, ARMHR, LLC, d/b/a TIGRE, JOSHUA BOISSY, and ANDRES OYOLA, Defendants. | CIVIL ACTION NO.___  **COMPLAINT** |

Plaintiff Juan Jose Zazueta Jr. ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge as to himself and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Juan Jose Zazueta Jr. brings this action against his former employers and their principals for sex discrimination in employment. Defendants terminated Plaintiff's employment after learning that he was male.

2. In early December 2024, Plaintiff applied for a server position at Tigre, a restaurant in Manhattan owned and operated by the Corporate Defendants. He completed a trial shift on December 10, 2024, during which restaurant management documented overwhelmingly positive feedback, describing him as making a "very good first impression," being "very calm and smart," and likely to be "a great fit and balance the team."

3. On December 12, 2024, Defendants issued Plaintiff a written confirmation of his employment for the server position, including compensation terms and onboarding

1

instructions. By that time, Plaintiff had already been entered into Defendants' payroll system, completed billable hours, and commenced training.

4.  That same day, Defendant Joshua Boissy, a principal owner and decision-maker, learned for the first time that Plaintiff was male. His immediate response was to ask, *"Juan is a women?"* When informed that Plaintiff was male, Boissy stated, *"We discussed this in great detail,"* referencing prior instructions that only female servers were to be hired. When management protested that Plaintiff would be a great fit, Boissy responded: *"I was very clear about the brief with you, if you are going to ignore my very clear instructions then you will find yourself to be disappointed."*

5.  Defendants then terminated Plaintiff's employment. Boissy directed that Human Resources be contacted to ensure the decision was not "illegal." HR then instructed management to call Plaintiff and inform him that he was being let go.

6.  The next day, Defendants offered a pretextual justification, claiming the termination was due to "budget constraints." This explanation was pretextual. Upon information and belief, Defendants hired a female candidate for the same server position immediately after terminating Plaintiff.

7.  The evidence of discriminatory intent is direct and unambiguous. Boissy's own words, captured in contemporaneous text messages, establish that he maintained a policy of hiring only female servers and that Plaintiff was terminated solely because he did not conform to that policy.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964).

9. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in New York County, New York, within the Southern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On or about April 15, 2025, Plaintiff filed a Charge of Discrimination (Charge No. 520-2025-05328) with the United States Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination.

12. The EEOC issued a Notice of Right to Sue on December 9, 2025. Plaintiff received the Notice of Right to Sue on or about December 9, 2025.

13. This action is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## PARTIES

### Plaintiff

14. Plaintiff Juan Jose Zazueta Jr. ("Plaintiff" or "Mr. Zazueta") is an adult individual residing in Kings County, New York. At all relevant times, he was an employee of Defendants and was entitled to the protections of Title VII of the Civil Rights Act of

1964, the New York State Human Rights Law, and the New York City Human Rights Law.

**Corporate Defendants**

15. Defendant Maison Premiere Corp. ("Maison Premiere") is a New York corporation with its principal place of business at 298 Bedford Avenue, Brooklyn, New York 11249. Upon information and belief, Maison Premiere is affiliated with the ownership or operation of the restaurant operating under the trade name "Tigre" at 105 Rivington Street, New York, New York 10002.

16. Defendant Premiere Enterprises LLC ("Premiere Enterprises") is a limited liability company with its principal business address at 90 State Street, Suite 700 OFC 40, Albany, New York 12207. Upon information and belief, Premiere Enterprises is affiliated with the management of Tigre.

17. Defendant The Downtown LLC ("The Downtown") is a limited liability company conducting business at 107 Rivington Street, New York, New York 10002. Upon information and belief, The Downtown LLC is listed on payroll documents and served as the formal employer of Tigre staff.

18. Defendant ARMHR, LLC ("ARMHR") is a limited liability company with a principal office at 5015 Campuswood Drive, Suite 204, East Syracuse, New York 13057. Upon information and belief, ARMHR was the employer of record responsible for human resources administration at Tigre.

19. Defendants Maison Premiere, Premiere Enterprises, The Downtown, and ARMHR (collectively, the "Corporate Defendants") owned, operated, managed, and/or controlled Tigre, including its hiring, employment, and personnel decisions. At all relevant times,

the Corporate Defendants were Plaintiff's employer and acted as joint employers within the meaning of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

20. Upon information and belief, each Corporate Defendant employed fifteen (15) or more employees at all relevant times and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

**Individual Defendants**

21. Defendant Joshua Boissy ("Boissy") is an adult individual who, at all relevant times, was a principal owner, managing operator, and decision-maker at Tigre. Boissy maintained and enforced a policy of hiring only female servers and personally directed the termination of Plaintiff's employment based on Plaintiff's sex. Boissy exercised authority over hiring, firing, and the terms and conditions of employment at Tigre. Boissy is individually liable under the NYCHRL and NYSHRL for his direct participation in the discriminatory conduct described herein. Upon information and belief, Boissy's ownership interest in and operational control over Tigre render him an 'employer' within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-102.

22. Defendant Andres Oyola ("Oyola") is an adult individual who, at all relevant times, held the position of Complex Director of Human Resources for the Refinery Hotel and Hotel on Rivington, and who was responsible for human resources functions at Tigre. Oyola participated in employment decisions affecting Plaintiff, including by issuing Plaintiff's written confirmation of employment and subsequently providing the pretextual justification for his termination. Oyola dismissed Plaintiff's complaint of sex discrimination as a "misunderstanding."

## FACTUAL ALLEGATIONS

### A. Plaintiff's Application and Trial Shift

23. On or about December 5, 2024, Plaintiff applied in person for a server position at Tigre, located at 105 Rivington Street, New York, New York 10002, by delivering his resume directly to General Manager Daniela Romano ("Romano").

24. During this initial meeting, Romano told Plaintiff that she appreciated that he came in person because she needed to "physically see everyone in-person before onboarding or interviewing."

25. Romano invited Plaintiff to complete a trial shift at Tigre.

26. On December 10, 2024, Plaintiff completed his trial shift at Tigre.

27. Following the trial shift, Tigre's maître d', Lucile Guichon ("Guichon"), submitted a written end-of-day report in which she documented her assessment of Plaintiff. Guichon described Plaintiff as making a *"very good first impression,"* noted that he was *"really matching the vibe"* and had *"style but isn't a diva,"* that he was *"very calm and smart,"* *"showed high interest in Tigre,"* and that she had a *"very good feeling about him"* and believed he would be *"a great fit and balance the team."*

28. Guichon further noted that Plaintiff was flexible with scheduling, had a second job, and had completed an onboarding toast during the shift.

29. Both Guichon and Romano recommended Plaintiff for the server position.

### B. Commencement of Employment

30. On December 11, 2024, Plaintiff commenced employment at Tigre by beginning a training shift. He was entered into Defendants' Toast payroll system and completed billable hours as an employee.

6

31. On December 12, 2024, Defendant Oyola, on behalf of Defendants, issued Plaintiff a written confirmation of his employment via email. The email stated: "WELCOME you to the TIGRE Team!" and confirmed that Plaintiff had been hired for the role of Server at Tigre, effective December 11, 2024, at a rate of $10.65 per hour plus tips.

32. The email included onboarding instructions, including directions to complete a contact sheet, provide identification for I-9 verification, and complete sexual harassment prevention training. Plaintiff was directed to respond to HR to confirm acceptance.

33. Plaintiff's direct supervisor was identified as Daniela Romano, who was to coordinate his training schedule and provide uniform information.

34. By this point, Plaintiff had been hired, had commenced employment, had been placed on payroll, and had completed compensable work for Defendants.

**C. Discriminatory Termination**

35. Upon learning that Plaintiff was male, Defendant Boissy immediately questioned Plaintiff's sex. In a text message to Romano, Boissy wrote: *"Juan is a women?"*

36. Romano responded: *"No he's a man but you're going to love his look."* She added: *"He's like a darker Dalen,"* referring to an existing male employee who was apparently the sole exception to Boissy's gender-based hiring policy.

37. Boissy responded: *"We discussed this in great detail,"* referencing prior instructions that Tigre was to hire only female servers.

38. Romano attempted to advocate for Plaintiff, writing: *"Yes and you mentioned that we had someone like Dalen in the server team,"* and, *"I want you to meet him and then decide."* She added: *"I wouldn't have considered him if I didn't think you would like him."*

39. Boissy did not respond to Romano's advocacy and did not agree to meet Plaintiff before making his decision.

40. Shortly thereafter, Romano informed Boissy that she had spoken with Oyola from HR and had told Plaintiff that Defendants would not be moving forward with hiring him. Romano wrote: *"I spoke to Andres from HR and let Juan know we wouldn't be moving forward with hiring him, it's very disappointing because he would've been a great fit."*

41. Boissy responded: *"I was very clear about the brief with you, if you are going to ignore my very clear instructions then you will find yourself to be disappointed."*

42. Upon information and belief, Boissy contacted HR to determine whether his decision to terminate Plaintiff based on his sex was legally permissible, demonstrating consciousness of the discriminatory nature of his conduct.

43. In a separate text message exchange, Romano described the situation to a colleague, stating that "Joshua literally called HR to make sure he wasn't doing anything Illegal" and that HR then instructed her to inform Plaintiff that he was terminated.

44. Romano expressed distress over having to deliver this news, stating that it "almost made me cry having to tell him." Her colleague responded that the conduct was "so wild" and "illegal," and expressed that she could not continue to work for someone who engaged in such practices.

45. Romano also told Plaintiff during a phone call on December 12, 2024, that Boissy did not want to hire male servers and that Plaintiff was being terminated on that basis. She identified only one male employee as an "exception" to Boissy's policy. Romano expressed reluctance to put this information in writing, describing it as "cowardly" and "embarrassing."

8

**D. The Pretextual Justification**

46. On December 12, 2024, Plaintiff sent a written communication to Defendant Oyola, raising concerns of sex discrimination and requesting compensation for the training shift he had completed.

47. On December 13, 2024, Defendant Oyola responded by email, claiming that Plaintiff's termination was due to "budget constraints" and that Defendants had "reassessed our staffing needs." Oyola characterized the situation as a "misunderstanding" and denied any discriminatory intent.

48. This explanation was false and pretextual.

49. Upon information and belief, Defendants hired a female candidate for the same server position at Tigre within days of terminating Plaintiff, directly contradicting the claim that the position was eliminated due to budget constraints.

50. During Plaintiff's training shift on December 11, 2024, he personally met a female candidate who was also completing a trial shift for the same cocktail server position. Upon information and belief, this female candidate was subsequently hired for the role from which Plaintiff was excluded.

51. Plaintiff was qualified for the position and had been approved through the trial process by multiple members of restaurant management.

52. The sole reason for Plaintiff's termination was his sex.

**E. Defendants' Failure to Compensate Plaintiff**

53. Despite Plaintiff's repeated requests, Defendants delayed payment for the training shift Plaintiff had already completed. On December 20, 2024, Plaintiff again demanded payment.

54. On December 30, 2024, eighteen days after Plaintiff's first request, Defendant Oyola acknowledged that payroll had not processed the payment and requested Plaintiff's personal information to issue a check. This further evidences Defendants' disregard for Plaintiff's rights.

### FIRST CAUSE OF ACTION

### (Sex Discrimination in Violation of Title VII – Against Corporate Defendants)

55. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

56. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), prohibits employers from discriminating against any individual with respect to hiring, discharge, compensation, or the terms, conditions, or privileges of employment because of such individual's sex.

57. Plaintiff was hired for the server position at Tigre. He completed a successful trial shift, received overwhelmingly positive evaluations, commenced employment, was entered into payroll, and received a written confirmation of his employment.

58. Defendants terminated Plaintiff's employment because he was male, in direct violation of Title VII.

59. Defendant Boissy's contemporaneous statements, including "Juan is a women?" and "We discussed this in great detail," constitute direct evidence of sex-based animus.

60. Defendants' proffered reason for the termination, "budget constraints," was false and pretextual, as demonstrated by the subsequent hiring of a female candidate for the same position.

61. Defendants' conduct was willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages.

62. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, lost wages, emotional distress, humiliation, mental anguish, loss of enjoyment of life, and other compensable damages.

## SECOND CAUSE OF ACTION

**(Sex Discrimination in Violation of the NYCHRL – Against Corporate Defendants and Boissy)**

63. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

64. The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), prohibits employers, and persons acting in their capacity as agents of employers, from discriminating in employment on the basis of gender.

65. Under the NYCHRL, Plaintiff need only demonstrate that his gender was a motivating factor in Defendants' decision to terminate his employment. The NYCHRL must be construed broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.

66. Defendants terminated Plaintiff's employment because he did not conform to Defendant Boissy's gender-based hiring criteria, which required that servers be female.

67. Defendants' conduct violated the NYCHRL.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, compensatory damages including lost wages, emotional distress, and humiliation.

11

69. Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION

### (Sex Discrimination in Violation of the NYSHRL – Against Corporate Defendants)

70. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

71. The New York State Human Rights Law, N.Y. Exec. Law § 296(1)(a), prohibits employers from discriminating in employment based on sex.

72. Defendants terminated Plaintiff's employment because he was male, in violation of the NYSHRL.

73. Defendants' conduct was willful, wanton, and malicious, entitling Plaintiff to punitive damages under the NYSHRL.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, compensatory damages including lost wages, emotional distress, and humiliation.

## FOURTH CAUSE OF ACTION

### (Aiding and Abetting Discrimination in Violation of the NYCHRL – Against Boissy)

75. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

76. The NYCHRL, N.Y.C. Admin. Code § 8-107(6), makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under the NYCHRL.

77. Defendant Boissy directly participated in, directed, and was the primary architect of the discriminatory decision to terminate Plaintiff's employment. Boissy maintained a policy

12

of hiring only female servers, questioned Plaintiff's sex upon learning his name, directed management to terminate Plaintiff, and reprimanded the general manager for disregarding his discriminatory instructions.

78. Boissy aided and abetted the Corporate Defendants' unlawful sex discrimination in violation of the NYCHRL.

79. As a direct and proximate result of Boissy's conduct, Plaintiff has suffered, and continues to suffer, compensatory damages.

## FIFTH CAUSE OF ACTION

**(Aiding and Abetting Discrimination in Violation of the NYSHRL – Against Boissy)**

80. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

81. The NYSHRL, N.Y. Exec. Law § 296(6), makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act forbidden under the NYSHRL.

82. Defendant Boissy knowingly and directly participated in and facilitated the discriminatory termination of Plaintiff's employment, in violation of the NYSHRL.

83. As a direct and proximate result of Boissy's conduct, Plaintiff has suffered, and continues to suffer, compensatory damages.

## SIXTH CAUSE OF ACTION

**(Aiding and Abetting Discrimination in Violation of the NYCHRL – Against Oyola)**

84. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

85. Defendant Oyola, as Director of Human Resources, participated in the discriminatory employment decision by ratifying the termination of Plaintiff, providing the pretextual

13

"budget constraints" justification, and dismissing Plaintiff's complaint of sex discrimination as a "misunderstanding."

86. Oyola aided and abetted the Boissy's and Corporate Defendants' unlawful sex discrimination in violation of the NYCHRL.

87. As a direct and proximate result of Oyola's conduct, Plaintiff has suffered, and continues to suffer, compensatory damages.

## SEVENTH CAUSE OF ACTION

### (Aiding and Abetting Discrimination in Violation of the NYSHRL – Against Oyola)

88. Plaintiff repeats and realleges each and every allegation set forth above as though fully stated herein.

89. Defendant Oyola knowingly participated in and facilitated the discriminatory termination of Plaintiff by endorsing the decision, providing a false justification, and failing to take corrective action despite Plaintiff's complaint of sex discrimination.

90. Oyola aided and abetted Boissy's and Corporate Defendants' unlawful sex discrimination in violation of the NYSHRL.

91. As a direct and proximate result of Oyola's conduct, Plaintiff has suffered, and continues to suffer, compensatory damages.

## DAMAGES

92. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer:

    a. Lost wages and employment benefits, both past and future;

    b. Severe emotional distress, humiliation, mental anguish, and loss of enjoyment of life;

14

c.   Reputational harm;

d.   Attorneys' fees and costs; and

e.   Pre-judgment and post-judgment interest.

f.   Plaintiff further claims punitive damages and all other relief the Court deems just and proper.

## JURY DEMAND

93. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Juan Jose Zazueta Jr. respectfully requests that the Court enter judgment in his favor and against Defendants, and award:

A.   Compensatory damages in an amount to be determined at trial;

B.   Back pay and front pay;

C.   Punitive damages;

D.   Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), N.Y. Exec. Law § 297(10), and N.Y.C. Admin. Code § 8-502(g);

E.   Pre-judgment and post-judgment interest;

F.   Declaratory and injunctive relief;

G.   Such other and further relief as this Court deems just and proper.

Dated: New York, New York

March 6, 2026

Respectfully submitted,

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
Derek Smith Law Group, PLLC
450 7th Avenue, 30th Floor

New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff*

16